IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| WILLIE YOUMANS,<br> 601 Edgewood Street NE<br> Apartment 209<br> Washington DC 20017<br><br>    *Plaintiff,*<br><br>v.<br><br>ROBERT A. MCDONALD,<br>SECRETARY,<br>U.S. Department of Veteran Affairs<br>200 Constitution Ave NW<br>Washington D.C. 20210-0002<br><br>    *Defendant,* | Case No.<br><br>JURY TRIAL DEMANDED |

---

## COMPLAINT

Plaintiff, Willie Youmans, by way of his attorney, Morris E. Fischer, Esq., hereby states the following complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant:

### PARTIES

1. Plaintiff, Willie Youmans, is an individual citizen and resident of the District of Columbia.

2. Defendant, Robert A. McDonald, in his official capacity as Secretary of the U.S. Department of Veteran Affairs.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., 42 U.S.C. § 2000(e) et. seq. and Title VII of the Civil Rights Act of 1964.

4. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

5. Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## FACTS

6. Plaintiff is an African American male.

7. On January 21, 2009, Plaintiff began working for Defendant as a Nurse-1, VN Title 38.

8. The Plaintiff's immediate supervisor was Roland "Chris" Redwood, RN, Supervisor of Medical Intensive Care Unit, Nursing Service, Washington, DC Medical Center.

9. After the Plaintiff started working at the VA, Mt. Redwood started to treat him differently than the female nursing staff.

10. The Plaintiff believed that his treatment by Mr. Redwood was because of the Plaintiff's sex.

11. In July, 2010, Mr. Redwood asked other employees to write up the Plaintiff for a "lost lab specimen."

12. Mr. Redwood had no information indicating that the Plaintiff lost the lab specimen and another nurse, Ms. Sampson refused to write the Plaintiff up.

13. Mr. Redwood then had a nurse, Angela Cooper shadow the Plaintiff.

14. No female staff was required to have a shadow.

15. In August 2010, the Plaintiff notified Mr. Redwood that his father was ill after being hospitalized and requested leave.

16. The Plaintiff was granted conditional leave until, On September 1, 2010, Mr. Redwood charged the Plaintiff 8 hours AWOL, stating "work is work and you need to learn how to take care of your family and your work comes first."

17. On September 2, 2010, the Plaintiff contacted an EEO counselor because he had a good faith belief that he was victim of discrimination and advised the counselor of his belief.

18. On September 3, 2010, Mr. Redwood was contacted by the EEO counselor.

19. At 7:00am on November 8, 2010, Plaintiff reported for duty.

20. At 7:15am, the Plaintiff received the "report" from the Nurse on duty, Nurse Jaclyn Willacy.

21. The "report" is an oral report given to each nurse at the start of the shift, letting the nurse knows what he or she has to do at the start of his tour.

22. Nurse Willacy informed the Plaintiff that "Patient X" (the patient at issue) needed "Heparin verification" and the Heparin was running into patient X's blood at a rate of 1075cc's.

23. At 8:00 AM, the Plaintiff took over the care of Patient X.

24. At 2:49 pm, the Plaintiff drew blood from Patient X and sent the blood to the lab, per protocol.

25. At 3:30 pm the lab ran the blood and sent notification, through the system that the blood thickness level was at 46.2 PTT.

26. According to the "Heparin protocol," when the Heparin patient's blood reaches a level of 46.2 PTT, the Heparin must be increased to a drip rate of 1275cc.

27. At 3:35 PM, the Plaintiff approached staff nurse Jacintha Onyegbule, RN.

28. Staff Nurse Onyegbule and the Plaintiff went over to Patient X and increased Patient X's drip rate to 1275.

29.     It is then the staff nurses responsibility to verify this in the computer with a code.

30.     At 5:15pm, the Plaintiff recorded that he increased the Heparin drip rate to 1275.

31.     The Plaintiff increased the Heparin level to 1275 pursuant to Heparin protocol.

32.     When the Plaintiff submitted this entry, and put Ms. Onyegbule's name as the witnessing nurse, the computer system automatically sent Ms. Onyegbule a notification with a request for signature.

33.     In this case, Ms. Onyegbule forgot to sign.

34.     After the Plaintiff properly increased the Heparin level and finished his shift he gave an oral report to the night nurse (next shift) Scott Overick.

35.     On November 10, 2010, another nurse, nurse Park told the Plaintiff that Redwood was "looking to get [Plaintiff]."

36.     Nurse Park also informed the Plaintiff that he had not yet recorded the Heparin levels for Patient X on the ICIP computer software.

37.     ICIP is a secondary software that records levels of patient activity.

38.     This is the same information that is recorded on the patients chart by the Heparin notice, the same notice the Plaintiff had filled out.

39.     Nurse Park instructed the Plaintiff to fill in the Heparin levels that he gave to the patient on November 8, 2010.

40.     Recording delayed entries on the ICIP is common practice among the nurses.

41.     The Plaintiff has obtained documents that show that all nurses, including the complaining nurses, record late ICIP entries and that these entries are acceptable.

42.     Mr. Overick had nine (9) occasions in which he failed to properly document ICIP entries and was not disciplined.

43. Mr. Redwood ignored this evidence, and moved to propose the Plaintiff's removal despite a clear indication that the Plaintiff had increased the medicine rates.

44. On September 2, 2010, Plaintiff contacted an EEO counselor.

45. Plaintiff complained about Mr. Redwood to the EEO counselor.

46. The EEO Counselor notified the facility and Mr. Redwood.

47. On January 3, 2011 the Plaintiff filed an EEO Discrimination Complaint. (Exhibit #1).

48. On April 1, 2011, Mr. Redwood proposed the removal of the Plaintiff.

49. On May 10, 2011, Mr. Redwood called the police to report blood and mucus in bowel movements, accusing the Plaintiff of sexual assault and/or rape.

50. The police found Mr. Redwood's accusations to be unjustified and that the VA failed to follow procedure regarding the investigation of the Plaintiff regarding those accusations.

51. On June 22, 2011 the proposal to remove the plaintiff was sustained.

52. On July 15, 2011, Plaintiff was terminated.

53. The Plaintiff filed another EEO complaint for removal from his position (exhibit #2) and ultimately requested a hearing with an Administrative Law Judge of the Washington, DC EEOC.

54. The administrative hearing process began.

55. The administrative hearing process included discovery.

56. Discovery was taken by both parties.

57. After discovery the Defendant moved for Summary Judgment.

58. The Plaintiff opposed the Defendant's Motion for Summary Judgment.

59. The Defendant's Motion for Summary Judgment was denied by the Administrative Law Judge.

## COUNT I

## UNLAWFUL TERMINATION BASED ON RETALIATION

60. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

61. The Plaintiff was retaliated against by Defendant, in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) et seq., when Defendant removed Plaintiff from Federal service.

62. Defendant's removal of the Plaintiff from Federal service was executed in retaliation for Plaintiff opposing unlawful employment practices in violation of 42 U.S.C. §2000e-3.

63. The Plaintiff engaged in protected activity by filing a formal EEO complaint.

64. The Defendant was aware of the Plaintiff's protected activity.

65. The Defendant's removal of the Plaintiff from Federal service caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

66. The Plaintiff's protected activity was the cause of the Defendant's removal of Plaintiff from Federal service.

67. Other similarly situated employees who did not participate in such complaints were not subject to the same conditions of employment as the Plaintiff.

68. A causal connection exists between the Defendant's removal of the Plaintiff from Federal service and the Plaintiff's protected activity.

69. The Defendant's removal of the Plaintiff from Federal service caused the Plaintiff monetary damages.

70. In addition to the above, the Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff demands:

 A. Economic damages for the losses that he suffered due to the discriminatory-and retaliatory actions.

 B. Removal from his personnel file any and all other negative information;

 C. Attorney fees;

 D. Reinstatement into the position;

 E. Compensatory damages; and

 F. All other relief that the Court deems appropriate.

Respectfully Submitted,

_____
Morris E. Fischer, Esq.
MD: Bar No. 26286
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

-8-

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

                                                Respectfully Submitted,

                                                _____

                                                Morris E. Fischer, Esq.
                                                MD: Bar No. 26286
                                                1400 Spring Street
                                                Suite 350
                                                Silver Spring, MD 20910
                                                (301) 328-7631 phone
                                                (301) 328-7638 fax
                                                Attorney for Plaintiff